HENRIETTA PETERSON, Administratrix of Estate of PETER L. PETERSON, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Division One, April 13, 1908.

1. **EXCESSIVE VERDICT: $5,000: Accentuated Injury.** Where plaintiff had had a bad leg for eighteen years prior to the accident, such as varicose veins below the knee and indolent and chronic sores and ulcers, at times swelling and suppurating, a verdict for $5,000, where, as a result of defendant's negligence, for a long time he was bedridden and suffered much, the femur of the leg at its neck was broken, the leg shortened, the foot everted, and the result a halting and crippled walk, is not excessive.

2. **PLEADING: Amendment: At the Trial: Terms.** The statutory right to amend a petition is not open to discussion. It can be amended at the trial—in this case by interlineations at the commencement of the trial upon objection by defendant to the introduction of any testimony on the ground that the petition did not state facts sufficient to constitute a cause of action. The only possible question when an amendment is proposed is one of the terms upon which the amendment may be made.

3. ———: ———: **Cause of Action: Stopping Car: Continuance.** A petition which alleged that defendant's Main street cars regularly stopped about ten feet north of Twelfth street for the purpose of permitting passengers to get off and on; that plaintiff on the 13th day of December, 1902, attempted to enter defendant's car at said point to take passage, and that, while in the act of doing so, with his foot upon the step at the back end of the car, defendant's servants carelessly and negligently started said car forward with a jerk, stated a cause of action, and while there was no specific averment that the car had stopped to receive passengers who might undertake to get on, yet it was implied, and the adding of that averment by amendment at the beginning of the trial, is no ground for complaint, or for a continuance.

4. ———: ———: ———: **Surprise: Continuance.** Whether or not the petition stated a cause of action before amendment, defendant is not entitled to a continuance, as of course, on that ground. A continuance is addressed to the sound discretion of the trial court, and every intendment exists in favor of the court's ruling in regard thereto. Neither is an affidavit of sur-

prise necessary, but it is significant that the affidavit does not state that defendant has a meritorious defense to the new matter brought in by plaintiff's amendment to his petition, that the new matter is not true, that the affidavit does not point out. that the defendant could not be ready to meet the new matter at any time, or that it had not subpoenaed witnesses to meet.it.

5. **STREET CARS: Evidence: Usual Speed.** Evidence of how long the particular street car stopped at the particular crossing in question and at what speed it moved across, is competent; but testimony that it stopped for the ordinary length of time and that it moved across at the usual rate of speed, is incompetent. Usual time itself may be negligent.

6. **JURISPRUDENCE: Scientific Accuracy.** Jurisprudence is not an accurate science in the sense of mathematical accuracy. It is an applied science, so adjusting itself to men's affairs as to produce just results.

7. **NEGLIGENCE: Plea of Contributory: General Denial.** A plea of contributory negligence, coupled with a general denial, would be, if the plea of contributory negligence is an admission of defendant's negligence, self-destroying pleas, and would authorize an instruction telling the jury that defendant admits its own negligence. Plaintiff's negligence, where there is an answer containing a general denial and a plea of contributory negligence, is, at bottom, in a case where defendant's negligence is charged and proved, contributory negligence.

8. ————: ————: **Burden.** Where plaintiff charges and proves negligence, and defendant's pleas are a general denial and contributory negligence, the burden is on defendant to prove plaintiff's contributory negligence.

9. ————: ————: ————: **Aided by Defendant's Instruction.** If error was committed in giving an instruction for plaintiff placing the burden of proving contributory negligence on defendant, it was cured by an instruction asked by and given for defendant telling the jury that if they find by "the evidence that plaintiff was guilty of negligence of any character which directly contributed to the injuries complained of" their verdict must be for defendant.

10. ————: **Mounting Stationary Car: Mounting Moving Car.** Plaintiff cannot sue on one cause of action and recover on another. He cannot state as his cause of action that he had been invited to enter a stationary car and had attempted to do so, and while he was on the steps of the car and while the relation of passenger and carrier existed the car started with a jerk and threw him off, and recover on the humanitarian doctrine that

the car had started when he attempted to get on it, and that defendant's servants knew that and by the exercise of ordinary care could have stopped the car in time to avoid injuring him. Those are different causes of action, and an instruction embracing the latter theory was not authorized by his petition. And in this case the error was not harmless.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED AND REMANDED.

*John H. Lucas, C. A. Loomis* and *Ben F. White* for appellant.

(1) The court erred in permitting plaintiff to amend his petition after going to trial. (2) The court erred in overruling defendant's application for a continuance on account of the amendments to plaintiff's petition. The amendments were material and made radical changes in the allegations of negligence. (3) The court erred in rejecting the testimony offered by defendant, first, in regard to the length of time the car had stood stationary; second, the manner of starting the car, as to whether it started slowly or otherwise. (4) The court erred in the giving of plaintiff's instruction 2, because the answer did not plead contributory negligence. Zumault v. Railroad, 178 Mo. 311; Payne v. Railroad, 129 Mo. 418; Beach, Contr. Neg. (2 Ed.) sec. 7; Shearman & Redfield on Neg., sec. 61; 7 Am and Eng. Ency. Law, 371. (5) The court erred in giving instruction 6 for plaintiff. This enlarged the issues by authorizing a recovery for a cause of action not in the petition—the Last Chance Doctrine. The cause of action alleged in the petition was starting the car with a "violent jerk and sudden movement so that plaintiff was thrown to the ground," and not a failure to stop a moving car which they might have discovered plaintiff attempting to board. Nowhere in the petition is there any attempt made to hold

defendant liable for any failure to stop a moving car; the only allegations are starting the car with a jerk, and that defendant could "by the exercise of ordinary care and diligence have known that plaintiff was in the act of entering upon said car before starting said car, and thereby have avoided to plaintiff the above-said injuries." Chitty v. Railroad, 148 Mo. 74; Yarnell v. Railroad, 113 Mo. 514; Hite v. Railroad, 130 Mo. 132; Orcutt v. Century Building Co., 99 S. W. 1062; Roscoe v. Railroad, 202 Mo. 576.

*Reed, Yates, Mastin & Harvey* for respondent.

(1) Applications for a continuance are always addressed to the sound discretion of the court, and the action of the court will not be interfered with unless it plainly appears that the discretion was abused and that wrong and injury resulted therefrom. Piefer v. Stanley, 57 Mo. App. 520. The affidavit was fatally defective in three respects: (a) It did not show that if the case was continued defendant could be ready for trial at the subsequent date; (b) it did not put in issue the truth of the amendment; (c) it did not allege that it had any defense to the amendment and, indeed, any defense to the cause of action, which would be sustained if a continuance were granted. Colhoun v. Crawford, 50 Mo. 460; Keltenbaugh v. Railroad, 34 Mo. App. 151; Dorsey v. Railroad, 83 Mo. App. 535. (2) Defendant indulges in "hair-splitting" argument to show that it did not actually plead contributory negligence, but that the effect of its plea was that the accident was due wholly to plaintiff's negligence. This argument, however interesting it may be from a scholastic standpoint, draws a line which is rather too fine to have been discerned by a jury. Indeed, the differentiation is so microscopic that it required about four pages of defendant's brief to point a distinction. But however entertaining the discussion may be, it is

decidedly unimportant in view of the fact that this instruction 2 was offered on behalf of the plaintiff after the defendant had submitted its instruction 6. Plaintiff's instruction 2 simply told the jury that the burden of proving this defense expressly submitted by defendant's instruction, was upon the defendant. Therefore, there can be nothing of merit in defendant's complaint. Crumply v. Railroad, 111 Mo. 152; Schmidt v. Railroad, 149 Mo. 269; Forrester v. Railroad, 116 Mo. App. 37; McGuire v. Railroad, 103 Mo. App. 475; Underwood v. Railroad, 102 S. W. 1045; Edington v. Railroad, 204 Mo. 67. (3) Complaint is made of instruction 6. This instruction told the jury that if at the time plaintiff sought to get on the car it had started, but was moving at such a rate of speed that it was reasonably safe for plaintiff to attempt to get thereon, and that the servants of defendant in charge of the car knew, or by the exercise of ordinary care could have known, that plaintiff was about to attempt to get on said car, and by the exercise of ordinary care could have stopped the car in time to have prevented the injury, but negligently failed to do so, then there could be a verdict for the plaintiff. This instruction was bottomed upon defendant's own evidence. The attempt to help plaintiff get upon the car under the circumstances made him a passenger, but the instruction did not require the strict measure of diligence imposed in the case of a passenger, but only the exercise of ordinary care, and clearly the company was liable under the state of facts shown. But it is argued that this instruction permitted a recovery upon a ground not stated in the petition. We cannot agree with this contention. The allegations of the petition clearly plead two things : (a) That the car was stopped or almost stopped, where plaintiff attempted to get thereon, and it was started forward with a violent jerk, or (b) that defendant's servants saw plaintiff in his position of peril, attempting to get on the car,

in time to have avoided the injury, but failed to do so. The authorities we have heretofore quoted show that it was not negligence *per se* for the plaintiff to attempt to get on when the car was moving slowly, particularly at a stopping place, and we maintain that it was the duty of the company, when it saw plaintiff attempting to get on, to either do one of two things: (a) To warn him not to get on, or (b) if it allowed him to attempt to get on and actually sought to assist him on, then to have used at least reasonable care to have avoided the injury. The conductor recognized the danger by giving the emergency signal; the gripman failed to respond to it and stop his car, and the injury resulted therefrom. Leu v. Railroad, 106 Mo. App. 329; Shanahan v. Railroad, 109 Mo. App. 228; McCarthy v. Railroad, 105 Mo. App. 596; Fultz v. Railroad, 111 Mo. 340. Clearly in this case, in any event, the Last Chance Doctrine applies. According to defendant's theory plaintiff was attempting to get on and was in a position of peril. The conductor recognized this by giving a signal to stop, and further inviting the plaintiff to attempt to enter by undertaking to assist him. After all this had taken place, while the plaintiff was in this position, the motorman negligently failed to stop the car, although he had abundant time to do so.

LAMM, J.—Peter L. Peterson sued for damages —his cause of action the negligence of defendant's servants manning one of its street cars in Kansas City, Missouri, on the 13th day of December, 1902. Defendant appeals from a judgment in favor of Peterson for $5,000. Here, his death was suggested and proceedings had reviving the cause in the name of Henrietta, administratrix of his estate.

Instructions in the nature of demurrers were asked, *nisi*, and refused. As we see it, defendant's learned counsel no longer predicate error of such re-

fusal; hence, the case may proceed on the assumption that plaintiff was entitled to go to the jury.

For our purposes, it will be sufficient to say that Peterson's injuries were permanent and serious. There was a fracture of the right femur at its neck, technically called an "impacted fracture," the broken bone being driven into the upper piece at the hip joint and held firmly. He was bed-ridden for a long time and suffered much. His right leg was shortened. His right foot was everted. The hurt leg being weakened and its use impaired, the result was a halting and crippled walk. There was testimony that his right leg had been a bad leg for eighteen or twenty years prior to the accident. Below the knee it was afflicted with varicose veins and indolent, chronic sores and ulcers, at spells swelling and suppurating, and this condition continued after the injury.

It will be sufficient for our purposes to sum up the facts of a long record as follows:

(a)  The accident happened at the intersection of Main and Twelfth streets in Kansas City, between half past eight and ten o'clock of the morning of December 13th, 1902. It is conceded that defendant had two tracks on Main street and two on Twelfth street, running its cars on all of them in its business of a common carrier of passengers for hire, as a street railway company. It is admitted these streets cut each other at an angle of ninety degrees. Main runs north and south. Twelfth approached Main on a sharp grade— making the intersection subject to danger in collision of cars. It is admitted that south-bound cars on Main stop before reaching the tracks on Twelfth for a dual purpose—first, to let passengers on and off; second, to see that the way is clear of cars running on Twelfth; and that when such cars cross Twelfth they again stop. Mr. Peterson was night clerk at Ferd Heim Brewery. At some time before, he suffered from rheumatism in

the left knee and carried a cane because of that. On the morning in question he had the cane in one hand and a paper package containing a quart of oysters in the other and undertook to board a street car running south on Main to go to his home. It does not appear he was then lame. He says he carried the cane on that occasion from habit, and testified he was fifty-seven years of age. It is conceded that the car in question stopped at the usual point north of the tracks on Twelfth, and that Peterson was hurt in trying to get on. So much is certain, but from this on the testimony is in hopeless conflict.

(b)  To sustain his case, Mr. Peterson took the stand and introduced one other witness on the incidents of the accident to-wit, Mr. Herzberg.

By Mr. Peterson, testimony was given tending to show that he arrived at the car while it was stopped north of the Twelfth street tracks. That he reached its rear steps on the west side preparatory to entering as a passenger. That he waited for some passengers to get on and off. At that instant he held said cane and package of oysters in his left hand. That he was the last passenger to try to enter. There are two hand-rails at the steps—one to the front and the other to the rear, the forward one attached to the body of the car, the rear one attached to the dashboard. That while the car was standing still he seized the front hand-rail with his right hand, got one foot on the first step and one on the second and, while in that condition and before he had time to get on the platform, the car started forward with a jerk and threw him off and broke his thigh. The usual signal for starting a car is two bells. Mr. Peterson says he heard no starting signal. He says the conductor was standing with his back to the dashboard, facing south, hard by the head of the steps.

By Mr. Herzberg, a printer, testimony was given

tending to show that he had known Peterson for eighteen years. That witness was at the northwest corner of Twelfth and Main waiting to take a Twelfth street car west, and saw Mr. Peterson come around the back end of the south-bound Main street car, while it was standing still, and "get on" the car, which then "jerked" and threw him off. He explains that by getting on the car, he meant on the steps leading to the platform and that he was holding with his right hand to the rail. That when the jerk threw him off he fell at once on his right side. That a year or so afterwards he was talking to a man about the accident and Mr. Peterson came up and heard what he said. Up to that time he had not seen Peterson and had not told him what he knew. That he (witness) was going west on Twelfth street, got on his car and saw the accident after he got on, and as his car was moving off.

The foregoing is substantially plaintiff's case on the facts.

(c) Defendant introduced a mass of testimony from an array of witnesses, some of them disinterested, tending to show a radically different state of things.

By a Mr. Stewart, a merchant, proof was put in tending to show that he was a passenger and remembered the accident, although not seeing it. The first thing he knew of it, the car stopped suddenly when just over and clear of the Twelfth street tracks. The first thing he saw after that was the conductor helping Mr. Peterson on the car. After Mr. Peterson came in and sat on a rear seat a little while, he made the remark that he "ought to know better than to try to get on a car while it was in motion." That at the time the car suddenly stopped it was going a "pretty good gait," that is, as fast as they could attain speed from the

time they had started—that they had only started, after a stop in front. (north) of the tracks.

By Mr. Stevens defendant put in proof tending to show that he lived at Junction City, Kansas, and was working on a farm. That at the time of the accident he lived in Kansas City. That he was standing at the northwest corner of Twelfth and Main and saw the car Peterson tried to board. That at the time Peterson tried to get on it had started up, and he came around from the east side of the car behind it and got hold of it and fell. That the car had gone fifteen feet when he grabbed hold. Witness went over to him and saw the conductor get off and come and pick him up. That the car was running slowly when Peterson took hold. That he did not get on the platform and that he did not see him get on the steps but fell more towards the back of the car than anything else. As witness saw it, Peterson took hold of the hand-rail at the back end of the car with his left hand and at that very time he (Peterson) was "stepping along pretty good."

By Mr. Belles defendant put in proof tending to show that he was the conductor in charge of the car, but was not working for defendant at the time of the trial. That when the car stopped north of the Twelfth street tracks a few passengers got off. That there were only four or five passengers on the car after starting. That (though there may have been others) he definitely remembers of only one passenger getting on, and he a Mr. Speas, another conductor—at the time off duty. Witness was standing at his proper place on the platform at the car door and Speas was standing to his left. Witness was in plain view of the steps, and the car stood there a minute or a minute and a half. A car never starts without a signal given by the conductor. On this occasion witness saw no passengers at the steps or approaching at the time he gave the usual signal bells to go ahead and the car started.

After the car was going, Mr. Peterson appeared from the back end around the corner of the car and grabbed the rear hand-bar, witness didn't know with which hand. When he grabbed the hand-bar it became at once apparent he was going to fall, and witness instantly grabbed hold of him but could not manage him, and he fell out of witness's grasp to the ground and witness gave the emergency bells to stop. The car drifted on over the tracks on Twelfth street, stopping clear of them. He had hold of Mr. Peterson when he fell and was trying to protect him from falling by assisting him on the car. He fell about six or eight feet north of the Twelfth street tracks. That the car was running slowly while he had hold of Peterson and ran slowly on across the Twelfth street tracks after he lost his hold of him and he fell, and that the car did not start with a jerk. At the time witness thought the proper thing to do was to take hold of Peterson by boosting him on. That after clearing the tracks so as to avoid any collision the car stopped three feet south of them. Witness knew nothing about the number of points the motorman put on—he was busy with Mr. Peterson.

By Mr. Dickson, a commercial traveler, defendant put in proof tending to show he was on board the car, getting on at Twelfth and Main at the rear steps. He stepped forward and seated himself about one-third of the way towards the front. The car started immediately after he seated himself or just as he was seating himself. He saw no one else at the steps trying to get on. Witness's attention was then attracted by two other passengers glancing back and, himself looking in that direction, saw the head and shoulders of a man "bobbing up and down." Whether the man was trying to get on the steps or was on the ground, witness could not say. He saw this motion as though he was walking or climbing and slipping back until he

disappeared. The car stopped when it crossed the Twelfth street tracks. Witness then stood up and saw the conductor helping a man towards the car and assisted him on. Witness saw no one, and knew of no one, waiting to get on the car when he got on, and did not see Peterson pass around the rear of the car. It was two or three seconds after he sat down before his attention was called to the rear by two passengers opposite him looking that way. This was after the car had started. The conductor got off before the car stopped south of the tracks. The car was half way across the tracks or very near that when he saw the head of the man moving up and down at the rear. Witness did not think the man was holding on to the tail end of the platform. He seemed to be up in front of the steps or opposite to them and he seemed to get partly up and either fell off or slipped off or was thrown off.

By Michael Crowley, a policeman, defendant put in proof tending to show that he was at the southwest corner of Twelfth and Main talking to defendant's flagman. He had just reported from a police box at that point and, facing north, he saw Mr. Peterson start from the curb stone, trying to move "pretty fast" across Main street to the west. There was a car there just starting up going south slowly. Mr. Peterson got behind the car and the rear end of the car got between him and the witness. The next thing witness saw was Mr. Peterson lying on his face in the street. Peterson did not walk and did not run—"might be a trot."

By Charles Speas, defendant put in proof tending to show that he was in its employ as conductor and got on the car to report for work. Witness was standing on the curb on the west side of Main, the car stopped, some passengers got on and witness stepped up and got on the car last. Nobody else was standing there at the time ready to get on. Witness had waited for all passengers to get on and followed them, remaining in

the back vestibule with Belles, the conductor. No one else entered after witness, and he took said position and the car started. Witness had plain view and was looking right out. Belles reached up and gave two bells as soon as witness took position at his side. The car started off slowly. Mr. Peterson came running from behind the car somewhere and reached up and grabbed the gate rod with his left hand. He fell back and the conductor grabbed and gave three bells and the motorman stopped. In witness's opinion the car had moved very nearly its length (forty feet) when Peterson grabbed for the car. Peterson did not get on the steps of the car but seized hold of the rail around the vestibule of the car. There is a rod at the tail end of the car and Peterson grabbed that. The car was not going over three or four miles per hour.

By Mr. Wilcox, the motorman, defendant put in proof tending to show that the car stopped with its front end ten or fifteen feet north of the Twelfth street tracks and remained standing there the usual time. Witness received a signal from the conductor to go ahead and did so. He put the power on one point to start and then about two more points to cross the crossing, and threw off the current to get the car stopped. The first thing witness knew of the accident was he got three bells—an emergency stop. Was right on Twelfth street crossing and he looked around to see the trouble, cleared the tracks and stopped. When witness got three bells and glanced back he saw Mr. Peterson had fallen in the street.

The foregoing is substantially defendant's case on the facts.

At the commencement of the trial, defendant's counsel objected to the introduction of any testimony, because the petition did not state facts sufficient to constitute a cause of action. Thereupon plaintiff's counsel amended by interlineation. The petition as

amended (amendments in parentheses) is as follows:

"The plaintiff, Peter L. Peterson, says, that the defendant now is and was at all of the dates hereinafter mentioned a corporation duly organized and existing according to the laws of the State of Missouri, and engaged in running and operating lines of street railway over various streets in the city of Kansas City, Jackson county, Missouri, and especially over and along Main street and Twelfth street, streets of said city.

"Plaintiff further says that on the 13th day of December, 1902, the defendant was engaged in running one of its electric cars over and along Main street at a point about ten feet north of Twelfth street, in said Kansas City, Missouri; that said cars regularly stopped at said point about ten feet north of Twelfth street on Main street for the purpose of permitting passengers to get off and on said cars; that on the said 13th day of December, 1902, the plaintiff attempted to enter (one of defendant's) said electric car at said point, about ten feet north of said Twelfth street, on said Main street (while said car was so stopped or almost stopped for the purpose of permitting passengers to get thereon), and in so attempting to get on said electric car as a passenger the plaintiff had caught hold of a brass rail on the back part of said electric car with one of his hands and had placed one of his feet upon the step at the back end of said car, and was in the act of entering therein for the purpose of becoming a passenger thereon; that while plaintiff was so entering upon said car as above said, the defendant, by its agents, servants and employees, carelessly and negligently started said car forward in a (southerly) northerly direction, and with a violent jerk and sudden movement so that plaintiff was violently thrown to the ground, and so that his right hip struck upon the street, and was thereby broken and fractured, and so that

plaintiff thereby sustained an impacted fracture of the neck of the right femur, and plaintiff further says that the back of his head struck upon said street and was thereby cut, bruised and contused, and plaintiff was thereby greatly jarred and shocked.

"Plaintiff further says that defendant, by its agents, servants and employees, carelessly and negligently started said car, as above said, before plaintiff had time to enter thereupon, and that defendant, its agents, servants and employees knew that plaintiff was in the act of entering upon said car, as above said, or by the exercise of ordinary care and diligence could have known that plaintiff was in the act of entering upon said car before starting said car and thereby have avoided to plaintiff the above said injuries.

"(That it was the duty of defendant to stop said car long enough to permit plaintiff to safely get thereon and reach a place of safety, but defendant as above said carelessly and negligently failed to do so.)

"Plaintiff further says that on account of his said injuries he has become disabled, lame and crippled, and has ever since been confined to his bed, and that plaintiff can never be cured of his said injuries. That plaintiff has been compelled to lay and expend large sums of money in his efforts to be cured of his said injuries, and become liable to pay out large sums therefor, to-wit, the sum of one hundred and fifty dollars.

"Plaintiff further says that he has suffered great bodily pain and mental anguish on account of his said injuries, and will continue in the future to suffer great bodily pain and mental anguish therefrom.

"Plaintiff further says that by reason of his said injuries he has been damaged in the sum of ten thousand dollars.

"Wherefore plaintiff prays judgment against defendant for the sum of ten thousand one hundred and

fifty dollars, for which he asks judgment and for his costs herein.''

The case was tried on the following answer:

''Now comes defendant and for answer to the petition of plaintiff filed herein denies each and every allegation in said petition contained.

''And for further answer defendant says that if plaintiff received any injuries at the time mentioned in said petition, the same were caused by plaintiff's own fault and negligence.

''Wherefore defendant prays to be dismissed with its costs.''

When the petition was amended as shown by matter included in the parentheses, defendant asked for a continuance for reasons stated in the following application, verified by affidavit:

''Comes now defendant and prays the court to continue the above cause because the plaintiff has amended his petition upon the trial of said cause against the objections of defendant; that said amendments are material, and said amendments so made against the objection of defendant allege new, different and material issues, and charge new, different and material acts of negligence not alleged or contained in the original petition, and that defendant is surprised by said amendments, and that defendant cannot safely proceed to trial at this time on account of said amendments.

''CHAS. A. LOOMIS,

''Attorney for Defendant.''

Defendant assigns error: (1) On the amendment of the petition; (2) in overruling the application for a continuance; (3) in rejecting testimony offered by defendant; (4) in giving instructions for plaintiff; (5) and in refusing two instructions for defendant.

Other questions are discussed; for instance, defendant's learned counsel say, *arguendo*, that the ver-

211 Sup.—33

dict is so excessive as to show prejudice and passion in the jury. It is said, *arguendo,* by plaintiff's learned counsel that we may not consider the bill of exceptions.

The scope of the instructions given and complained of, those refused, and any additional facts necessary to determine questions raised, will appear in connection with the discussion of them.

I.   As pointed out, Mr. Peterson's right leg had been a bad leg, under the proof, for eighteen or twenty years gone. But the proof does not show, nor do counsel argue, that the leg, bad as it was, did not fill a useful and necessary office to Mr. Peterson. Clearly, defendant had no right to negligently break the neck of the thigh bone of a bad leg any more than of a good leg. A leg might be so very bad, that to break the bone of it would cause little damage, but here considering the permanency of the injury in resulting deformity and weakness and pain of body and anguish of mind following and attending the injury, we are of opinion that, if defendant is responsible therefor and that responsibility was determined by a fair trial, a verdict of $5,000 is little enough. The point is disallowed to defendant.

II.   Plaintiff's counsel claim fatal omissions in the record pertaining to filing the affidavit for appeal, to perfecting the appeal at the term the motion for a new trial was overruled, to the extension of time for filing a bill of exceptions and to the filing of it within the time granted. It is not necessary to elaborate these contentions. They have been looked into for substance and are without real merit. The record is not as plain as it might be. But, given a liberal interpretation, it seems to show all essential facts in the particulars questioned. The point is disallowed to plaintiff.

III.  Did the court err in allowing amendments; and err again in refusing a continuance? We think not; because:

(a)  The statutory right to amend a petition is not open to discussion.  The right of a court to permit a petition to be amended is nothing more than plain, everyday, hard-headed sense.  The right to act with good sense may (modestly) be assumed to be inherent in any court, and (it is likely) would exist without written law.  Counsel make the point that plaintiff had no right to amend the petition at the trial, but they give no reason or cite no authority.  All things, says Coke, are confirmed or impugned in one of two ways— by reason or authority.  The point should not have been made; for the only possible question is one of *terms* on which the amendment may go and that question is not raised.

(b)  The principal proposition under this head is the refusal to grant a continuance after amendment. It is argued that prior to the amendments the petition stated no cause of action because there was no averment that the car had stopped to receive passengers who might undertake to get on; that the amendments supplied that omission; that after amendment the petition for the first time stated a cause of action; and that amendments of that character, made at the commencement of a trial, entitling the defendant to a continuance as of course, much more should one go in view of the application and affidavit filed in this instance.

But we can agree neither to the premise, nor to the conclusion if the premise were true.  The petition did state a cause of action.  It alleged that defendant's Main street cars regularly stopped about ten feet north of Twelfth for the purpose of permitting passengers to get on and off.  That plaintiff on the 13th day of December, 1902, attempted to enter defendant's car at *said point* to take passage and that, while in the act

of doing so with his foot upon the step at the back end of the car, defendant's servants carelessly and negligently *started said car forward with a violent jerk.*

The allegation that the car *"started"* was by necessary implication an allegation that the car was stationary at the time. A thing can't start without a *stop.* The one includes the other, *ex vi termini.* We had occasion to discuss a similar contention in Flaherty v. Railroad, 207 Mo. 1. c. 335, where it was said: "But in ordinary speech, if A says B 'moved forward,' there is a fair implication, at least, that A means that B was in a condition of repose when the movement began. If A was bent on expressing the idea that B was going at the time, but then and there began to hasten his pace, he would naturally have inserted some word to convey the accelerated motion. The absence of such modifying word, here, is not without significance."

What was said in the Flaherty case, though in discussing an instruction, applies here. If the petition had said that the car started forward "more *rapidly"* that would convey the idea it was *moving* at the time, but there is no such word used and the petition is only subject to the criticism that it defectively or obscurely stated a cause of action—not that it stated none whatever. It would have been good after verdict.

But, if it were conceded that the petition stated no cause of action before amendment, defendant would not be entitled to a continuance, as of course, on that ground. The canonized rule is, and all the cases hold, that a continuance is addressed to the sound discretion of the trial court—a discretion to be soundly exercised. It is trite law that every intendment exists in favor of the trial court's action on an application for a continuance. The statute under which these particular amendments were allowed is Revised Statutes 1899, section 688, reading: "When a party shall amend any pleading or proceeding, and the court shall be satisfied,

by affidavit or otherwise, that the opposite party could not be ready for trial in consequence thereof, a continuance may be granted to some day of the same term, or to the next regular term of the court.''

It will be seen from that statute that an affidavit is not essential. The court may be satisfied ''by affidavit or *otherwise*'' that the opposite party could not be ready for trial in consequence of the amendment.

There was no attempt, except by the affidavit, to satisfy the court that the defendant could not be ready for trial; attending to that affidavit, it does not show defendant had not subpoenaed witnesses on the issues made by the amendments. Subsequent events showed it had—and all it knew of. It does not state that the allegations, as amended, are not true, or that it had a meritorious defense to the new matter, nor does it point out that defendant could be ready to meet those allegations at any other time. Hence, we find no fault with the court's ruling on the application. It is fully sustained by the following cases cited by counsel construing section 688, *supra*: Colhoun v. Crawford, 50 Mo. 458; Keltenbaugh v. Railroad, 34 Mo. App. 147; Pifer v. Stanley, 57 Mo. App. 516; Keeton v. Railroad, 116 Mo. App. 281.

The point is ruled against defendant.

IV. It is next contended that reversible error was committed in excluding testimony offered by defendant relating to the length of time the car stood stationary north of the Twelfth street tracks and to the manner of starting the car, whether slowly or otherwise. To grasp the contention intelligently more of the record is necessary, viz.: When the conductor was on the stand defendant's counsel sought to prove by him the ''usual time'' that cars stopped to let passengers on and off. The conductor was allowed to testify to the time this car stood stationary at the time and place in question, but was not allowed to testify as to the usual or cus-

tomary time cars stopped. When Mr. Dickson, the commercial traveler, was on the stand he .was asked: "Now, did the car start up, and how did it move across the tracks there with reference to speed?" He answered: "Well, the same as usual, I would think." That question was stricken out as a comparison and a conclusion and defendant excepted. It was then sought to qualify Mr. Dickson. To that end, he testified he had frequently .ridden on cars in Kansas City on defendant's lines and had occasion to notice and know how cars moved as they started across intersecting tracks. He was then asked to state (based on his experience) how this car moved in its starting and speed as compared with the way cars usually moved at such crossings. The question was objected to and ruled out —defendant excepting. He then testified, in answer to questions, that the car started with enough speed to get across and stopped on the other side of Twelfth street twelve feet or such a matter from the tracks, and that he remembered no jerk. He was further asked whether he noticed "it was going at a rate of speed?" His reply was: "It was going the ordinary rate of speed of a car crossing a crossing, stopped on both sides." This answer was stricken out on motion of plaintiff's counsel and defendant excepted.

Did the court commit error in its rulings on the exclusion of testimony? We think not. Counsel were allowed full swing to establish how long this car stood north of Twelfth street for passengers to enter and leave. Evidently in order to show no negligence in a given stop, by way of comparison, the stops the stop itself is compared to, must be shown to be themselves not negligent; for one stop compared with others merely setteth the matter at large. It proves nothing. If there were no passengers to enter or leave at all it could not be held negligent to make no stop at all. If there were many passengers to enter or leave due care

would require a longer time than if there were few. Furthermore, "usual" time might be negligent time, and such issue only confuses a jury. The same remarks apply to the "usual" rate of speed with which cars pass over intersecting tracks. The vital question (if any) was not the usual but the actual rate of speed, and on that question there was no limit put on the investigation.

There is no merit in the point and it is ruled against the defendant.

V.  For plaintiff was given the conventional instruction on contributory negligence, which said there was such a defense, and put upon defendant the *onus* of proving the facts constituting it.  Counsel argue this was reversible error.  They say there was no plea of contributory negligence in the case and point to their answer, containing a general denial coupled with an averment that if plaintiff was injured "the same was caused by plaintiff's own fault and negligence," to maintain that position.  If we grasp the argument it is that a plea of contributory negligence, as such, in strict logic necessarily imports an admission that defendant was negligent, but, as plaintiff's negligence contributed to the injury, defendant's negligence was not actionable, and that the answer in this case was not a plea of that sort.

In disposing of the point it is not amiss to say that counsel have a foot to stand on; for by refinement in technical reasoning the contention is academically sound.  [Payne v. Railroad, 129 Mo. l. c. 418; Zumault v. Railroad, 175 Mo. l. c. 311.]

But it may be said again, as often before, that jurisprudence is not an *accurate* science in the sense of mathematical accuracy.  It is an *applied* science, so adjusting itself to men's affairs as to produce just results.  When we come to apply counsel's theory to a concrete case the logic of it would be that, whenever

a defendant pleads contributory negligence, it thereby admits its own guilt out of hand. Further, that if defendant in one breath denies its guilt and in the next breath asserts it (for example, by a plea of contributory negligence), it lays itself open to a charge of making contradictory and self-destroying allegations. It has not been hitherto supposed by the common thought of the profession that the stereotyped answer of defendants in negligence cases was subject to such novel construction. Let us see how that would work. Indulging an hypothesis, suppose under a plea of contributory negligence, coupled with a general denial, plaintiff would ask and receive an instruction telling the jury that by such plea defendant *admitted* its own negligence, would learned counsel contend such instruction was good law? Hardly, though it might do, if defendant stood alone in its answer on contributory negligence as a defense. The question in hand may be disposed of by holding, as we do, that the pith and sense of it all is this: Defendant's answer in this case denied its own and pleaded plaintiff's negligence. Now, plaintiff's negligence in a case where (as here) defendants negligence is charged and proved is at bottom "contributory negligence" and nothing else. There is nothing in a name—the thing to be got at is the substance.

Moreover, defendant asked and was given an instruction, as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff was guilty of negligence of any character which directly contributed to the injuries complained of, then there can be no recovery in this case, and your verdict will be for the defendant."

In the presence of that instruction, even if we were to concede that plaintiff's was erroneous, we must hold such error cured under the doctrine of aider.

The point is ruled against defendant.

VI.   Plaintiff asked and received the following instruction:

"The court instructs you that if you find from the evidence that the car in question had started at the time plaintiff attempted to get thereon, but was moving at such a rate of speed that under the circumstances it was reasonably safe for plaintiff to attempt to get thereon, and that the servants of defendant in charge of said car knew or by the exercise of ordinary care and caution could have known that plaintiff was about to attempt to get on said car and by the exercise of ordinary care could have stopped said car in time to have prevented the injury complained of, if any, but carelessly and negligently failed to do so, and by reason thereof plaintiff was injured, then your verdict will be for plaintiff."

Counsel insist the foregoing instruction put to the jury a ground of recovery not contained in the petition. Is there merit in this view? We think there is. Undoubtedly the instruction was good law if it had put to the jury an issue within the petition, and had not got away from the line of plaintiff's case as therein chalked out; because it but formulates the humanitarian or last clear chance doctrine. If a person intending to become a passenger on a street car attempts to mount a moving car under circumstances given in the instruction, it needs no citation of authority to sustain the self-evident proposition that those manning and operating the car who see him in peril at the time, or should have seen him in peril, may not with that notice and knowledge thereafter negligently continue running the car and thereafter cause loss of life or limb to one so putting himself in peril, when they could have avoided it by exercising due care. But if a plaintiff desires to recover on that theory, he must state such ground of action and couple it with other elements of negligence

upon which he desires to predicate recovery. In this case, there is no such cause of action set forth in the petition. To the contrary the particular negligence explicitly alleged, and referred to more than once, is not the failure to *stop* a going car which Mr. Peterson without invitation was attempting to board while in motion. It is the very opposite to that, to-wit, the negligent *starting* of a car which he was mounting under defendant's invitation at a place where passengers were let off and taken on. In other words, plaintiff states a cause of action based on the theory that he had been invited to enter the car and had so far accepted the invitation that by necessary inference the relation of passenger and carrier sprang into existence, and that defendant violated its duty to him under such circumstances. The instruction on the other hand does not predicate recovery on the relation of passenger and carrier. It allows a recovery under the humanitarian doctrine and without the relation of passenger and carrier necessarily existing. It would serve no judicial purpose to cite authority to sustain the proposition that a plaintiff may not sue on one cause of action and recover on a different one.

That the error was not harmless is further shown from the state of the proof. The clear preponderance of the testimony was to the effect that Mr. Peterson negligently undertook to board a car that was pursuing its journey after those manning it had performed their full duty in stopping it at the usual place to receive passengers. That he was not expressly or impliedly invited to enter the car as a passenger. That the conductor, on seeing his peril, instinctively sought to save him from injury by seizing hold of him. There is no call for hair-splitting in weighing the conductor's acts in such crisis. He could not well give an emergency stop and rescue a man in imminent peril at the self

same instant of time. He had to think and act quickly and with singleness of purpose. The drama was played out in a moment. There is nothing to show that he fell short of his duty. Complaint is made that the car was allowed to drift over the Twelfth street tracks without stopping after the emergency bells were given; but the testimony also shows the emergency bells were not given until Mr. Peterson had already fallen. In this view of the case, the onward movement of the car across the Twelfth street tracks could not be held negligence. The motorman, under such circumstances, did but his duty in clearing those tracks to avoid the danger of a collision with the Twelfth street cars. The case then went to the jury on the testimony of Mr. Peterson and Mr. Herzberg. It was entitled to go to the jury, but was only so entitled under discriminating care in the instructions of the court. In this case there is no room for saying the error was harmless error.

VII. Counsel complain of other instructions given plaintiff. The gist of it is that they were not closely confined to plaintiff's theory of the case in putting to the jury the issue as to whether the car had stopped or slowed down to receive passengers and Mr. Peterson had accepted the invitation to enter and was entering it. We do not hold there is reversible error in this regard. There is obscurity in the instructions on the score mentioned and if the case under existing statutory law can be tried again, and is tried without amending the petition, the instructions should be cleared up in those particulars.

In view of what has been said alleged error in refusing certain of defendant's instructions needs no consideration.

The cause should be reversed and remanded. It is accordingly so ordered.

All concur.