JAMES W. ELLIS, Respondent, v. JAMES S. WAHL, Appellant.

Springfield Court of Appeals, June 2, 1914.

1. ASSAULT AND BATTERY: Exemplary Damages: Evidence Admissible. Action for assault and battery, exemplary damages being claimed. On the question of exemplary damages, *held* that defendant's evidence as to how he came to be at the place of business of the plaintiff where the assault took place was admissible.

2. ————: ————: ————: Scope of Evidence. In an action for damages for assault and battery the jury is not restricted to the corporal punishment which the plaintiff received, but may consider the malice of the defendant, the insulting character of his conduct and all the circumstances and may thereupon award such exemplary damages as are in their judgment warranted.

3. AMENDMENTS: Continuance on the Ground of Surprise: When Refused. In an action for damages because of an ·assault and battery, the allowance of an amendment of the petition at trial which added allegations as to injuries received by plaintiff to his nose, concerning which injury · testimony, unobjected to, had been given, a continuance requested by the defendant on the ground of surprise was properly refused. [Sections 1848 and 1961, R. S. 1909.]

4. APPELLATE PRACTICE: Application for Continuance: Presumptions as to Trial Court's Actions. Considering the granting or refusal of an application for continuance by the trial court, every intendment exists in favor of the trial court.

ɔ. INSTRUCTIONS: Pleading: Assault and Battery. In an action for damages for assault and battery an instruction is examined and *held* not too comprehensive under the pleading.

Appeal from Pemiscot Circuit Court.—*Hon. Frank Kelly*, Judge.

AFFIRMED (*on. condition*).

*Ward & Collins, Duncan & McCarty* and *A. L. Oliver* for appellant.

(1) The court erred in permitting the trial amendment of plaintiff's petition except upon terms. Sec. 1951, R. S. Mo. 1909; McMurray v. Martin, 26 Mo. App. 442; Pence v. Gubberts, 70 Mo. App. 208; Wells v. Sharp, 57 Mo. 56. (2) Plaintiff's chief instruction (No. 1) which undertook to embody the necessary allegations of the petition is erroneous. The instruction is too broad and goes even beyond the purview of the amended petition, and is erroneous, because there is no allegation even in the amended petition that plaintiff's nose was broken by defendant. Black v. Railroad, 217 Mo. 684; Bank v. Murdock, 62 Mo. 73; Mansur v. Botts, 80 Mo. 658; Arnold v. Maryville, 110 Mo. App. 260; Pinney v. Berry, 61 Mo. 366; Muth v. Railroad, 87 Mo. App. 432. (3) The court erroneously excluded material evidence offered by defendant. Joice v. Branson, 73 Mo. 28; Nichols v. Wrin-

frey, 79 Mo. 553; Mitchell v. Railroad, 125 Mo. App. 14; Wamsganz v. Wolff, 86 Mo. App. 215; Gillfillen v. McCrills, 84 Mo. App. 581; Berryman v. Cox, 76 Mo. App. 74; State v. Smith, 164 Mo. 583.

*Sam J. Corbett* and *Shephard, Reeves & McKay* for respondent.

(1) The granting of a continuance in such cases rests in the discretion of the court, and the filing of an amended petition does not of itself entitle the opposite party to a continuance, unless the court be satisfied that his inability to be ready arises from the amendment, and that he has a meritorious defense. Peterson v. Railroad, 211 Mo. 498; and cases cited. (2) If there was any error in Instruction No. 1 it was error against plaintiff and not against appellant, therefore appellant has no right to complain. The instruction added an extra burden to plaintiff.

FARRINGTON, J. Action for damages for personal injuries alleged to have been sustained by the plaintiff, James W. Ellis by reason of an alleged assault and battery. Plaintiff sued for five thousand dollars actual and five thousand dollars exemplary damages. Nine jurors signed a verdict giving him two hundred and fifty dollars actual and two hundred and fifty dollars exemplary damages, and defendant appealed.

Plaintiff in his petition filed on June 30, 1913, alleged that defendant on June 25, 1913, without just cause or provocation, wilfully, wrongfully and unlawfully assaulted, beat and wounded the plaintiff by then and there choking him in and upon his throat, and by striking plaintiff a heavy blow with his first in and upon the right eye *and on the nose of plaintiff,* cutting a large gash over the right eye, and bruising the flesh in and around the right eye of plaintiff, and by strik-

ing plaintiff a heavy blow with his fist in and upon the left eye, bruising the flesh in and around plaintiff's left eye, and by striking this plaintiff a heavy blow on the back of his head, bruising the flesh on the back of plaintiff's head, and by punching and stamping plaintiff with his knee in and upon the breast of plaintiff, thereby bruising and wounding plaintiff in and upon his said breast. After the usual averments of consequent pain and mental anguish and expense, it is alleged that defendant's acts were wilful, wanton and malicious, and exemplary damages as well as actual damages are prayed for.

The answer pleads self defense, and then sets up what is intended to be mitigating circumstances in that defendant went to the building where the trouble occurred at plaintiff's request while in a peaceful frame of mind, but that because of plaintiff's insulting words and manner while in an intoxicated condition, the difficulty was brought on.

The reply is a general denial of the new matter.

Appellant does not contend that plaintiff was not entitled to a verdict, and it is therefore unnecessary to set out the evidence in detail.

Plaintiff for several months prior to the time complained of had been running a pool room in the city of Caruthersville occupying a building belonging to defendant. It seems that plaintiff had purchased the pool tables and other outfit in connection therewith from a man by the name of Hooper, paying part cash and giving a series of notes in the sum of fifty dollars each, due monthly, evidencing deferred payments, which said notes were secured by mortgage covering said pool tables and other property purchased of Hooper by plaintiff. Hooper was at said time in the saloon business in the city of Caruthersville, while defendant Wahl was agent in said city of the Lemp Brewing Company, thereby coming in contact with and having numerous dealings with the said Hooper, and the said Hooper,

Ellis v. Wahl.

being indebted to the defendant Wahl, assigned the
notes given by the plaintiff to the said Wahl, the de-
fendant, as security, for indebtedness due from Hooper
to the defendant. The testimony of plaintiff and de-
fendant both shows that they had personally known
each other some eight or ten years, and that during
all this time their relations had been pleasant, and that
no ill feeling was held by either toward the other.
Plaintiff testified that notwithstanding the long years
of friendship, on the day of the difficulty defendant
came to the pool room twice, and on the occasion of
the first visit advised plaintiff that he held the notes
which were given for the purchase of the pool tables,
and that they were past due, and made demand for
his money, to which plaintiff replied, "I will get out
and see what I can do;" that about three hours later,
defendant came back to the pool room and said to
plaintiff, "Give me them damn keys; I want to lock
this damn place up." That at that time they were both
sitting on a sofa in the pool room, and that he, the
plaintiff, handed the defendant the keys and made the
remark: "If you are going to do it, I guess you will
give me my note;" that defendant thereupon grabbed
him by the throat and pushed him against a pool table,
where he (plaintiff) reached back to get a pool ball,
but that by reason of being pushed backward he was
unable to get hold of a pool ball, and finally fell down,
and while down, defendant, who was still holding him
by the throat, struck and hit plaintiff over his eyes and
on his nose and on the back of his head, and that de-
fendant put his knees on plaintiff's breast, and that by
reason of this treatment he suffered great pain.

The testimony of the defendant is that on the day
before the trouble occurred plaintiff came to his office
and told him if he could not raise some money to pay
the rent and the notes which defendant held, he (plain-
tiff) would have to give up the pool room, and asked
defendant to wait on him until the next day; that on

the following morning plaintiff telephoned him to come to the pool room, that he (plaintiff) would have to give it up. Defendant did not go as requested, but states that about three o'clock in the afternoon while he and a man named Duncan were returning from the railroad depot, being reminded as they passed the pool room of what plaintiff had said to him, he went in and found plaintiff alone and that this was the first time he had seen plaintiff that day; that plaintiff had the appearance of being in a drunken condition; that when he approached plaintiff he said, "Jim, I have come down," and that plaintiff replied, "Yes, and here is your damned keys," and threw them on the floor. Defendant states that he then attempted to close the door between the pool room and a saloon room adjoining but that he could not fasten this door and asked plaintiff to help him, and that plaintiff replied, "God damn you, you got the keys; close up your own damn building;" that when plaintiff said this he was standing near a pool table, and that as defendant turned and looked back at him he saw plaintiff reaching for a pool ball which was about two and one-half inches in diameter. Defendant states that from plaintiff's demeanor he believed plaintiff meant to attack him and that what he did was to prevent this. Defendant offered to prove by Lee Hooper that on the same day of the difficulty and just a few hours prior thereto plaintiff told the witness he had 'phoned defendant to come and take charge of the pool room and that he had sent a messenger after defendant, and stated to the witness that as soon as defendant came he would turn the building over to him, but upon plaintiff's objection this testimony was excluded.

Appellant strenuously contends that this last-mentioned evidence should have been admitted in order that the jury might know why he went to get the keys from plaintiff and as showing mitigating circumstances to rebut plaintiff's theory that the assault was wrong-

fully and maliciously committed by reason of which plaintiff hoped to recover exemplary damages. Plaintiff had testified that defendant appeared on the scene with the profanity and threatening attitude hereinbefore detailed.

In this class of actions, where exemplary damages are sought, the jury are not restricted to the corporal injury which plaintiff suffered, but are free to consider the malice of the defendant, the insulting character of his conduct, and all the circumstances, and thereupon award such exemplary damages as those circumstances in their judgment require. [Berryman v. Cox, 73 Mo. App. l. c. 70, 71.] Such damages are allowed upon the theory that defendant's conduct has been such that he deserves to be punished. [Bulkly v. Knapp, 48 Mo. 152.] Plaintiff had testified that he was forty-five years of age and that he weighed one hundred and thirty-five pounds. His attorney had asked: "Are you a weakly man?" And he had been permitted to answer, "No, sir, I am not a very strong man." When it came time for plaintiff's counsel to cross-examine the defendant, the first question was: "How much do you weigh?" He answered that he weighed two hundred and thirty pounds. It was also brought out that defendant was six feet three inches in height and forty-nine years of age. To a jury, it would be one thing for such a man as the defendant was shown to be to deliberately go to a man's place of business, especially where the man was of plaintiff's size and condition, with determination to whip him, and to maliciously and wantonly chastise him until, as one of the witnesses said who saw plaintiff three or four days after the difficulty, "he looked like he had been in a bear fight," and quite a different thing for the same man to be sent for by the plaintiff and to come in a peaceful manner and become angered or provoked to fight while there. The difference would show up in the

180 App. 33

verdict for exemplary damages. In our case, the plaintiff had testified that he did not tell Lee Hooper that he had sent for defendant to come and take the place and did not tell Hooper he had 'phoned to defendant. But when defendant put Lee Hooper on the witness stand to bear out his version plaintiff successfully objected, and defendant then made a formal offer, the effect of which was that Hooper if permitted would have testified sustaining defendant's version. We think the court committed error in its ruling in this regard. [See, Joice v. Branson, 73 Mo. 28.]   In Berryman v. Cox, 73 Mo. App. l. c. 74, the defendant on appeal contended that the trial court erred in rejecting his offer of evidence to show the motive which prompted him to visit the plaintiff on the occasion of the difficulty which resulted in the injuries for which plaintiff sued. The trial court's ruling was sustained *because only compensatory damages were claimed by plaintiff in his petition,* and therefore the motive of the defendant was wholly immaterial. But in our case exemplary damages were claimed and instructed upon, and the jury allowed such damages. If the defendant in this case went to plaintiff's pool room of his own volition, put on an air of friendliness to begin with, and then purposely entered into a fight and injured the plaintiff, the jury might well be influenced into allowing substantial exemplary damages. On the other hand, if defendant went to the pool room at the solicitation of the plaintiff, and after reaching there some controversy arose that brought on the fight, the jury would be justified in reasoning that under such circumstances the fight was begun in hot blood and was not the result of a deliberate, premeditated motive or intention and therefore much of the sting of malice would be removed. This evidence offered by the defendant that he was invited to the plaintiff's pool room by the plaintiff in our judgment was proper and owing to the fact that punitive or exemplary damages were allowed

the trial court committed reversible error in excluding it. Unless, therefore, the plaintiff desires to remit the entire recovery of exemplary damages and thus cure the error, the cause will have to be tried again.

Appellant complains of the action of the trial court in permitting plaintiff to amend his petition after the trial had started.

At the beginning of this opinion is set out a portion of the petition. At the commencement of the trial the six words which we have written in italics in copying from the petition were not there, but were inserted by interlineation by consent of the court after the plaintiff, his physician and another witness had testified. Defendant's objection to the amendment was overruled, whereupon he filed an affidavit of surprise setting up the state of the proceedings and alleging that the amendment was made after the testimony of the physician was given to the effect that the injury to plaintiff's nose was the most serious injury, and that he, the defendant, was surprised and unable without notice to combat such allegation and proof, and asked a continuance which the court refused. It may be remarked that it was not true that the physician had so testified at the time. Afterward, on cross-examination by defendant's counsel, the physician did testify that the most serious injury was the one to plaintiff's side, that is, the one most likely to give trouble, but that outside of this, the injury to the nose was the most serious.

Section 1848, Revised Statutes 1909, provides that "the court may, at any time before final judgment, in furtherance of justice, and on such terms as may be proper, amend any . . . pleading, . . . or by inserting other allegations material to the case, or when the amendment does not change substantially the claim . . . by conforming the pleading . . . to the facts proved."

Section 1961, Revised Statutes 1909, is as follows: "When a party shall amend any pleading or proceeding, and the court shall be satisfied, by affidavit or otherwise, that the opposite party could not be ready for trial in consequence thereof, a continuance may be granted to some day of the same term, or to the next regular term of the court."

Under the view we take of this contention it is unnecessary to go into the decisions as to what is a substantial change, or as to how elastic is the discretion vested in the trial judge both in allowing amendments and in granting continuances by reason thereof, or just to what extent amendments may be made before judgment to conform the allegations to the proof.

Looking into the record, we find the plaintiff testifying, *without objection*, in this fashion—"he broke my nose right here" (indicating); and on cross-examination by defendant's counsel testimony was elicited which appellant abstracts in this language: "My nose has been broken; anybody can see where it has been broken; this jury can see where it has been broken." When the next witness was describing how plaintiff looked three or four days after the difficulty, and had said, "his nose was in pretty bad shape," and had then been asked, "In what way?" and had answered, "It was bruised," defendant's counsel asked that this be stricken out, and the request was refused and exception saved. Plaintiff's physician, testifying in his behalf, stated *without objection* that plaintiff's nose was pretty badly mashed—"it was not broken, but the tender part of the nose was jabbed down some, known as the cartilage of the bone was thrown down; I mean by that, it was broken loose from the hard part." He testified that this condition does not amount to much, that it is not necessarily painful, and that doctors get good results toward recovery in such cases. For the first time defendant's counsel then objected that there was no allegation upon which to base such proof. The

amendment by interlineation was then allowed, followed by defendant's affidavit of surprise in a vain attempt to secure a continuance.

The foregoing statement of the bare proceedings is a sufficient reply to defendant's contention that reversible error was committed in the refusal of a continuance. Appellant's counsel say they do not contend that plaintiff did not have a right to amend the petition in the manner he did, and it is not claimed that the amendment changed the cause of action or introduced a new cause of action, so that those questions do not arise.

In the case of the Waverly Timber & Iron Co. v. Cooperage Co., 112 Mo. 383, 20 S. W. 566, the amendment requested did not change the cause of action. A deposition was on file (and the witness giving it had been cross-examined by the defendant) and this deposition contained the substance of what the desired amendment consisted. The Supreme Court in holding that the amendment should have been allowed said that under the circumstances it could not have wrought a very great surprise to defendant, but that, if it had, that was a matter for the court after permitting the amendment. In our case, the defendant made no objection whatever when plaintiff testified that his nose was broken and the fact was again brought out on cross-examination, so that it is highly probable that defendant was not very much surprised by this kind of evidence or it would have been manifested by an objection earlier in the trial.

We do not think there was an abuse of discretion on the part of the trial judge in refusing a continuance in this case in view of the record. ''It is trite law that every intendment exists in favor of the trial court's action on an application for a continuance.'' [Peterson v. St. Ry. Co., 211 Mo. l. c. 516, 111 S. W. 37.]

Appellant complains of plaintiff's first instruction.

As amended, plaintiff's petition contained the six words we have written in italics, to-wit, "and on the nose of plaintiff."

Plaintiff's first instruction is as follows: "The court instructs the jury that if you find and believe from the evidence that the defendant, on or about the 25th day of June, 1913, wilfully assaulted the plaintiff at and in the city of Caruthersville, Missouri, by choking the plaintiff, or by striking the plaintiff over the right eye and bruising the flesh around the right eye, or by striking and breaking the plaintiff's nose, or by striking and cutting the back of plaintiff's head, or by bruising and injuring the plaintiff's breast by the defendant placing his knee thereon, thereby wounding and injuring plaintiff, and that said assault was without just cause or excuse, then your verdict will be for the plaintiff."

Appellant claims this instruction goes beyond the purview of the amended petition because there is no allegation in the amended petition that plaintiff's nose was *broken* by defendant. Appellant asked an instruction, which was refused, to the effect that the jury should disregard all testimony as to any injury to plaintiff's nose.

In the case of Arnold v. City of Maryville, 110 Mo. App. l. c. 260, 85 S. W. 107, the Kansas City Court of Appeals said: "In an action for nuisance it will be sufficient to make a general charge of injury without specifying its details, but if the particlar injuries resulting from the principal one are specified in the petition, 'all that are designed to be proved should be stated.' [Pinney v. Berry, 61 Mo. 366.]" In that case, the action was for damages for personal injuries received on one of defendant's sidewalks, and the petition alleged that the bones of plaintiff's foot were broken and the ligaments torn confining the plaintiff to her room with great pain and permanent disability of the foot, etc. It was held that evidence of a malig-

nant growth on the foot and the subsequent amputation thereof could not be shown in evidence as elements of damage, the court saying: ''The amputation of the foot on account of cancer thus omitted to be charged as one of the results of her injury did not occur until after this action was begun. Doubtless it may properly be shown that injuries specifically charged continued on down to the time of the trial and that they were permanent. But that is an altogether different proposition from that of suddenly confronting a defendant with a cause of injury not one of those specifically alleged and with the aggravated results of such injury after the beginning of the suit.''

The same court in Doster v. Railway Co., 158 S. W. 440, had before it a petition which alleged that plaintiff was ''seriously injured and bruised about her sides, back, head, legs, arms and hips, her spine was bruised and injured and her whole nervous system was severely shocked and injured, and that her right leg was severely and permanently bruised and injured, and the flesh torn therefrom above the knee.'' Over the objection of defendant, plaintiff was permitted to prove that her right hip was fractured. The court, after referring to decisions concerning the general principle that proof cannot enlarge the scope of the injuries *specifically* alleged, holds that the allegation above quoted is general and not specific, and that evidence of a fracture to the hip bone certainly was within the range of the general averment that plaintiff had been seriously injured in her hips.

That decision sufficiently answers appellant's contention. There was some evidence that the plaintiff's nose was broken, and none that it was not broken; that is, as it would be generally understood, because the physician's testimony showed that he made a distinction between the breaking of the bone of the nose and the breaking of the cartilage of the nose; nor was

there any evidence that such injury was due to or could be laid to any intervening cause.

We have examined the other contention of appellant as to his objections to the physician's testimony, upon which appellant cites no authorities, and find that it is not well taken.

If the plaintiff will within ten days from the date of the filing of this opinion file with the clerk of this court a written remittitur of all that part of the judgment relating to the verdict for exemplary damages with the accrued interest thereon, the judgment will be affirmed for two hundred and fifty dollars actual damages with accrued interest; otherwise, it will be reversed and the cause remanded for a new trial. *Robertson, P. J.,* concurs. *Sturgis, J.,* dissents in part in a separate opinion.

## DISSENTING OPINION.

STURGIS, J.—I concur in the majority opinion, except in holding that the trial court committed reversible error as to punitive damages in excluding the evidence, contradictory of plaintiff's evidence on cross-examination, that he (plaintiff) told a third party that he sent word to defendant in the morning before the assault in the afternoon for defendant to come and take charge of the pool room. The majority opinion holds this to be error because such evidence would tend to rebut any inference of malice or wantonness and was proper in mitigation of punitive damages. I find no fault with the law as announced, but only as to its application to the facts here.

While defendant in a suit involving punitive damages growing out of an assault is entitled to mitigate such damages by circumstances tending to disprove wantonness or malice, yet, this extends to such circumstances only as have some material bearing on that issue. Had plaintiff made any claim in this case or

was there any evidence that defendant came to the pool hall run by plaintiff in an angry mood or with the intent to insult, abuse or assault him, or even against plaintiff's will, then his motive in going there would be material. In this case, however, as I read the evidence, plaintiff was making no such claim but both parties testified that they had always been the best of friends and that there was a total absence of ill will up to the very time of the assault. Plaintiff admitted that he had told defendant he would give up the pool hall unless he could raise the money to pay what was due and his evidence shows that defendant was welcome to come there to collect money or otherwise. At the time of the assault, plaintiff says defendant came to his pool hall about three-thirty o'clock in the afternoon, that up to then they had never had any trouble; that being in the back part of the hall, defendant called him to "come here, Jim," and both then sat down on a "sofa;" that defendant said he had learned at the office that plaintiff had not paid the rent and asked for the keys. According to both, the first manifestation of anger occurred at this point. Defendant says both were friendly up to that time; that he came by the pool hall on other business and went in casually and not on the special invitation or request given in the morning and with no thought of any difficulty. The defendant claims that plaintiff got angry on his demanding the keys and, after some hot words, tried to assault him with a pool ball and that he acted in self-defense. Plaintiff says he gave him the keys, "and, up to that time, I was not mad and if he was mad, I do not think he was;" that defendant became angry because he asked for his unpaid notes and thereupon assaulted him without any cause or provocation.

Under these facts, what material difference could it make whether plaintiff had sent word to defendant in the morning to come and get the keys or not. Such fact had no influence on the state of mind or the motive

of either party and was wholly disconnected with the assault or cause thereof. If it was material to show that defendant went to the pool hall in a good humor and with no anger or ill will towards plaintiff and with no intent to assault him, such was admitted to be the fact and the case was tried on that theory. All direct evidence on this point was admitted. In fact, plaintiff was insisting that defendant was not angry at him and had no malice or ill will towards him and that there was no cause for any. We may grant that the evidence as to what plaintiff said about sending for defendant was so immaterial that its admission would have been harmless, but that is far from saying that its exclusion was so prejudicial as to compel a reversal of the case as to the punitive damages.

Nor does it seem to me that the evidence was offered to rebut malice in mitigation of exemplary damages as is now claimed. Its apparent purpose was to contradict and thus impeach the evidence on this point and was properly excluded by the trial court for the reason that it is not proper to contradict and impeach a witness on an immaterial matter. This is further shown by the fact that both plaintiff and defendant were allowed to testify fully as to all that passed between them as to the payment of the notes and rent and surrendering possession of the building, defendant affirming and plaintiff denying the incident of plaintiff's sending word to defendant in the morning to come and take possession of the building. It was only when defendant sought to contradict plaintiff as to his telling a third party that he had done this, that the objection was made and sustained.

It appears to me that no reversible error was committed in so doing and I favor an affirmance of the entire judgment.