BERTHA MAIER, Administratrix of the Estate of
EMMA PARKER, Respondent, v. METROPOLI-
TAN STREET RAILWAY CO., Appellant.

Kansas City Court of Appeals, January 19, 1914.

1. **NEGLIGENCE: Death from Wrongful Act: Sufficiency of
   Evidence.** In a suit under Sec. 5425, R. S. 1909, for the death
   of a passenger caused by an unusually violent starting up or
   jerk of the car, evidence that the car stopped and suddenly
   started with a violent jerk and that deceased immediately fell
   from her seat breaking her thigh and necessitating her im-
   mediate removal to a hospital where she remained in bed
   for seven days gradually sinking until she died, is sufficient
   to support a verdict for plaintiff so far as the neg-
   ligence and the death resulting therefrom is concerned.
   Only general negligence was alleged and, in the absence of
   specific allegations of negligence, when the deceased is shown
   to be a passenger, and the death is caused by an unusual,
   violent and severe jerk of the car, it is not necessary to prove
   the particular act of the motorman causing the jerk.

2. ————: ————: **Verdict in Excess of $2000: Evidence to
   Support.** If it is necessary for an administratrix suing under
   section 5425 to show pecuniary loss to the persons for whom
   suit is brought to justify a verdict greater than $2000 (about
   which no opinion is expressed), evidence that deceased was
   vigorous and healthy, could walk from eight to twelve blocks
   without visible fatigue and could and did sew, mend clothes
   and care for the children in the families of those who would
   be beneficiaries in the suit, is sufficient evidence of pecuniary
   loss to justify a verdict of $500 in excess of $2000, the purely
   penal amount allowed by the statute. And such verdict of
   $2500 is not excessive.

3. **PLEADING: Petition: Variance Between Allegations and
   Proof as to Movement of Car or Cause of Death.** When the
   petition does not allege that the car stopped previous to the
   start or jerk, but, when considered as a whole, relies upon
   an unusual jerk, or start, or starting up of the car, without
   reference to whether the car previously stopped or not, there
   is no variance between the petition and proof as to the move-
   ment of the car even if the latter does show that the car did
   not stop but merely slowed down and then suddenly jerked.
   Nor is there a variance in the proof as to the cause of death
   by reason of the fact that hypostatic pneumonia set in where
   the evidence shows that such was the natural direct and
   usually expected result of the injury and no other cause was
   shown therefor.

Maier v. Street Railway.

4. ————: **Petition Stating no Cause of Action: Jurisdictional Defect.** **Objection Made at any Time.** An administratrix suing under the fourth subdivision of section 5425 should allege the nonexistence of the individuals in the preceding clauses of the section in order to bring herself within the statute and show her right to sue. A petition failing to do this states no cause of action. Such defect can be objected to in any court and at any stage of the proceeding.

5. **TRIAL PRACTICE: Holding in Reserve Objection Fatal to Judgment.** The practice of holding in reserve an objection fatal to a judgment and not calling attention thereto until in the motion for rehearing, is not commended.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie,* Judge.

REVERSED AND REMANDED.

*John H. Lucas* for appellant.

*Henry L. Latshaw* and *Jessic E. James* for respondent.

TRIMBLE, J.—Mrs. Emma Parker, a lady eighty-one years of age, was a passenger on one of defendant's eastbound Troost avenue cars in Kansas City. She is alleged to have been thrown from her seat by a sudden, unusual, violent and severe starting up or jerk of the car, from which fall she received injuries that brought on her death seven days later.

Suit is brought by her administratrix under section 5425, Revised Statutes 1909. A demurrer to the evidence was offered and overruled. Verdict and judgment were for plaintiff, and defendant has appealed.

It is urged that there is no evidence to sustain the verdict, and the demurrer, therefore, should have been sustained, 1, because there was a variance between the allegations and the proof; 2, because there was a failure to establish negligence on the part of the motorman.

The objection as to variance contains two branches or divisions, namely:  (a)  The petition alleges a negligent *starting* of the car which necessarily implies that the car had come to a prior stop, and all the proof shows it did not stop.  (b)  The petition alleges death from negligent injury while all the proof shows death from hypostatic pneumonia.

A careful reading of the record discloses substantial testimony that the car came to a stop just prior to its alleged negligent starting up or jerking.  A plausible reason is given for its stopping in its passage across Walnut street and while its rear end was yet blocking Walnut street line, that reason being that a Brooklyn car was just in front of it at the point on Tenth street where the usual stop of the car in question was located.  One witness says he knows it stopped because he attempted to cross the street and was expecting to pass immediately behind the car when it had passed, but that to his surprise it stopped in front of him, thus blocking his further progress for a moment, and then the car started forward with an unusual lunge and jerk.  To put it in his language, ''The car was standing still, and it gave a lunge and jerk—something awful; something that I never seen before, an unusual jerk.''  This witness says that when this jerk occurred he ''heard some one holler'' and as the car passed him, on its way to its stopping place on East Tenth street, he ''saw an old white haired lady lying on the floor of the car with her head out of the door of the hind vestible.''  This was the position all the witnesses say deceased was in when she was thrown down. Whether or not this witness told the truth was for the jury to say.  He was in a position where the stopping of the car in Walnut street would more forcibly impress itself on him than on the other witnesses at other points on the sidewalk who had no occasion to notice anything unusual until after the car reached its regular stopping place on Tenth and the deceased was found

to have been thrown down. Of all the passengers on the car at the time, only one was put on the stand and she testified for the plaintiff. She was sitting opposite the old lady, and when the jerk came, the old lady was thrown from the seat. This witness also says she herself was thrown to one side but was saved by her escort catching her. She also says that just before the jerk the car came to a full stop or nearly so. And while the cross-examination shows that possibly she may have confused the stop of the car on West Tenth before it started across Walnut street with the alleged stop in Walnut street, yet such is not probable inasmuch as she is talking about the stop just before the jerk when the old lady was thrown down. And the pedestrian who was halted by the stopping of the car, thereby having his attention called both to the stop and subsequent jerk, says at that time he "heard some one holler" and saw the old lady's head in the doorway of the vestibule as the car passed.

But even if there was no stop of the car in Walnut street just prior to the alleged negligent start or jerk of the car, this would not create a fatal variance between the allegation and proof. The petition was all in one count, and all parts of it can be looked to in order to see what was alleged concerning the start or jerk even if plaintiff was compelled to elect whether it would rely on the facts that deceased was sitting in her seat or walking about in the car when she was thrown down. When all the allegations of the petition are looked to it will be seen that what is really relied upon is an unusually severe, sudden and violent jerk, or start, or starting up, of the car. There is no allegation that the car stopped before this happened, unless a stop is implied by the word "start." But when the whole petition is considered it is readily seen that the negligent act is the unusual *jerk* or sudden *starting up* of the car without reference to whether it had previously stopped or not. As said by Judge ELLISON

in Anderson v. St. Ry. Co., 159 Mo. App. 449, l. c. 451, "Starting up by a sudden jerk does not necessarily mean the car was started from a stop, but may well mean, in connection such as in this instance, a starting in rapid movement from a slow movement." In the case of Peterson v. Railway, 211 Mo. 498, cited in support of defendant's view, there was an allegation that the car regularly stopped at a certain point and that while plaintiff was in the act of boarding the car at that point the car started forward. This necessarily was an allegation that the car stopped, but there is no such necessary allegation or inference in the case before us. In addition to this, the defendant, by its instruction No. 4, submitted to the jury the question whether the jerk was that of a car that had previously been moving slowly or had come to a stop, and the jury by its verdict found that the car came to a stop and then started up with a jerk

As to the other ground of variance, that the petition alleged death from the injury while the proof showed death from pneumonia, we think the evidence showed the death resulted from the injury. There was evidence that deceased was a sound, very vigorous, and healthy old lady for one of her years. She could assist her niece, the plaintiff administratrix, in washing dishes, mending clothes and in nursing and caring for the children, and did do so. In fact she was on her way to nurse one of them, ill with typhoid fever, at the time she was hurt. She could walk by herself, unaided and alone, from six to twelve blocks without visible fatigue. The fall she received fractured the neck of her thigh bone and otherwise bruised her. She was taken direct to the hospital and put to bed, where she had to lie on her back, and there gradually grew worse until her death seven days later. It is true on the second or third day symptoms of hypostatic pneumonia appeared, that is, a condition resulting from the downward pressure or settling of the blood in the lower part of the lungs.

This was the usual, direct and natural result of the injury received which compelled her to lie on her back and thus brought on the so-called pneumonia. Such condition is always greatly feared in an injury to an old person. To say, in such case, that the injury did not cause her death would be to say that if a man wounded another, from which wound pneumonia or tetanus immediately set in and the man died, it was not the man but the disease that killed him. It is not so held in cases of homicide and certainly would not be the rule in a civil suit for damages.

The other contention is that there was a failure to establish negligence on the part of the motorman. The petition did not charge any specific act of the motorman by which the jerk was brought about. The petition merely alleged that deceased was a passenger and that the car gave an unusual, severe and violent jerk by reason of which deceased was thrown from her seat and injured. As said before, only one of the passengers, on the car when the jerk happened, testified. She was a witness for plaintiff and says deceased was thrown to the floor and that she herself was "jerked over sideways" but was caught by her escort, and that she had never experienced such a hard jerk before. Another witness said it was "a lunge or jerk—something awful; an unusual jerk."

The evidence that deceased was a passenger and that a jerk of such character occurred whereby she was thrown from her seat is evidence that the car was negligently managed in some particular. And in such case that is sufficient. It is not required of plaintiff to point out the specific act of the motorman causing such jerk. [Setzler v. Met. St. Ry. Co., 227 Mo. 454; Elliott v. Met. St. Ry. Co., 157 Mo. App. 517.]

Defendant urges that possibly the jerk was necessary as the result of applying sufficient power to start up the steep hill just ahead of it on East Tenth street. If such was the case it was incumbent on defendant to

show it. Plaintiff made out a prima-facie case when she showed an unusual and severe jerk. If it was necessary to at once apply so much power and was not made necessary by the negligence of defendant, then it was defendant's duty to show that fact. On the contrary, however, the motorman testified that he did not stop in Walnut street and did not cause a jerk at all.

The refusal of defendant's instruction No. 5 is next complained of. It is as follows:

"There is no evidence in this case that there was any violent, unusual or unnecessary jerk of the car at the time the deceased fell in the car, or that such jerk, if any, was caused by any negligent act of the defendant." The instruction was properly refused because, as hereinbefore shown, there was evidence of the severe and unusual jerk, and the fact such a jerk occurred is sufficient to carry an inference of negligence.

Instruction No. 6 asked by defendant was also properly refused. It read as follows:

"If the jury shall find from the evidence that Mrs. Parker's death was caused by hypostatic pneumonia, then your verdict must be for the defendant." The evidence was that while there were symptoms of hypostatic pneumonia it was the natural, direct and positive result of the injury and was what is always to be expected under such circumstances. There was no evidence that it was produced by any cause other than her injuries. Besides, the physician said her injuries were sufficient to cause her death and did cause it. Under such circumstances the refusal of said instruction was not error.

Another point is that the verdict is against the greater weight of the evidence. We are not the judges of that. The jury and the trial judge have found otherwise. We must accept their finding. We certainly cannot say there was no substantial testimony to support the verdict. A lady sitting next to the rear door upon a seat running lengthwise of the car is, in some

way, thrown from her seat to the floor bruising her and breaking her thigh. This much is not disputed. A pedestrian whose attention is directly upon the car because it has unexpectedly stopped in front of him, says the car then gave an "awful" jerk and immediately some one "hollowed" and when he got on the other side of the car he saw the deceased on the floor where she fell. A passenger on the car says the jerk threw the deceased there. Against this testimony the defendant offered the conductor, motorman, two policemen attending to their duties on the street, and two ladies who did not get on the car until after everything had happened and the car had stopped at its stopping place on Tenth. Their attention was not attracted to anything unusual until they saw the old lady either on the floor or being replaced in her seat by the passengers. There is no doubt but that the old lady was injured, that she was taken in an ambulance to the hospital, that she was immediately put to bed and gradually grew worse until she died. If the other passengers on the car could have told a different story as to what caused the injury, defendant did not call any of them as witnesses. Under all these circumstances we cannot say the jury had no evidence upon which to base its verdict.

It is also urged that the verdict is excessive. Upon what theory this claim is made we are not enlightened by the briefs. We assume, however, that the alleged excessiveness is deemed to arise out of the fact that the deceased was eighty-one years of age, did not live either with plaintiff or any of the beneficiaries for whom the administratrix is suing, and hence no pecuniary loss was suffered by them, and that the jury's verdict was for $2500, which is $500 more than the $2000 penalty provided by the statute as construed by the Supreme Court in Boyd v. Railway, 249 Mo. 110. We infer that defendant's contention is that, under Boyd v. Railway, supra, the $500 of the verdict, in the case at bar, is com-

pensatory and that if no pecuniary loss is shown, then a verdict in excess of the penalty is excessive. While the Supreme Court did not say explicitly, in the Boyd case, that everything over $2000 is *purely* compensatory and contains no element of penalty, yet there are grounds for accepting such as the holding. At any rate it does hold that where more than $2000 is demanded the jury should consider the age, condition of health, earning capacity of deceased, and the consequent loss to plaintiff, in assessing the amount of recovery above $2000.

In the case before us, however, there was evidence that deceased, although eighty-one years old, was active and very vigorous, could walk from eight to twelve blocks without visible fatigue, could and did assist her niece in washing dishes, sewing, and nursing and caring for the children, and was on her way to do so when she was hurt. The evidence shows that she had a sister eighty-seven years of age who was still active and vigorous. Under these circumstances we cannot say that $500 above the penalty was excessive even if all amounts above $2000 must be allowed solely on a basis of compensation for loss sustained by her death. It must be clearly understood that, in what is here said, we do not, either expressly or by implication, hold that pecuniary loss must be shown before more than $2000 can be recovered. All we say is that, if that is the rule, there was enough evidence in this case showing pecuniary loss to justify the so-called compensatory part of the verdict, and that, therefore, it was not excessive.

There are two other points in this case which are not pressed upon our attention in defendant's brief but which are cryptically preserved by it in the record. Under section 2083, Revised Statutes 1909, we are required to examine the record and award a new trial, reverse or affirm the judgment according to law. And we must do this even though defendant has not taken

the pains to clearly call our attention to it in its brief, so long as the points have been preserved in the record though hidden under a generality. Just why defendant should see fit to adopt this method of presenting its case to the court, is not apparent. We do not commend the course it has pursued.

The points referred to are set forth in what follows: In the motion in arrest, objection is made that the petition states no cause of action. (Nothing is said about this in the brief.) It is held that a petition which states no cause of action presents a fault that is in the nature of a jurisdictional defect, and the fatality of such a defect can be raised in any court and at any stage of the case. [Chandler v. Chicago & Alton Ry., 251 Mo. 592; Chiles v. Railroad, 117 Mo. 414, l. c. 427; Hauson v. Neal, 215 Mo. 256, l. c. 278.] Under section 5425, Revised Statutes 1909, an administrator can sue only when the individuals named in the first three subdivisions of the statute do not exist. In the petition before us there is no allegation whatever as to the nonexistence of the individuals coming within the first three subdivisions. Nor is there anything in the testimony to show the nonexistence of such individuals. Proof that deceased was eighty-one years of age might inferentially show that she did not have any natural born minor child or children, though there is no *legal* time at which the possibility of issue is extinct. But her age would not show that she had no husband living or had not adopted a minor child or children. And the petition says nothing about her age. It is also held in Chandler v. Railroad, supra, that a plaintiff, suing under section 5425, must bring himself by his pleading within the statute, otherwise his petition states no cause of action. Following the principle there laid down, it is apparent that plaintiff in this case has stated no cause of action, and the case must be reversed and remanded for a new trial as was done in the Chandler case.

It may be well to call attention to the fact that in the case of Johnson v. Mining Co., 156 S. W. 33, the Springfield Court of Appeal's, in an opinion by FARRINGTON J., has held that an administrator, suing under sections 5426 and 5427, which authorize an action for damages to be sued for by the same parties and in the same manner as section 5425, must, in his petition, allege the names of the beneficiaries for whom he sues, other than the estate, or he will state no cause of action. The case was, upon the dissent of ROBERTSON, P. J., certified to the Supreme Court where it is now pending, not yet having been decided, so far as our knowledge goes. The petition in the case before us contains no names of persons who would receive the amount recovered, nor does it state that there are any in existence who would be entitled to distribution under the law of descents. Inasmuch as the case must be reversed and remanded upon the point hereinbefore mentioned, it is unnecessary for us to express any opinion on the point now under discussion. If the point is deemed material, it can be provided for and guarded against in the amended petition already made necessary in the case.

The judgment is reversed and the cause remanded for a new trial. The other judges concur.